# Franklin Savings Bank, to the Use of Daniel H. Miller, Assignee, Plff. in Err., *v.* M. M. S. Bridges, Exrx. of Samuel A. Bridges, Deceased.

The statute of limitations is a bar to an action begun by the assignee of an insolvent corporation, more than six years after the assignment, against a subscriber to the stock to recover an unpaid portion of the stock subscribed for before the assignment.

(Decided February 28, 1887.)

Error to the Common Pleas of Lehigh County to review a judgment of compulsory nonsuit in an action of assumpsit. Affirmed.

At the trial before ALBRIGHT, P. J., the following facts appeared:

The Franklin Savings Bank was chartered by an act of assembly, approved February 9, 1870. The capital stock was fixed at not less than $10,000 nor more than $50,000, with liberty to increase the same to $150,000 in shares of $20 each. It remained at $50,000. S. A. Bridges was an original subscriber to the stock for 450 shares at $20 per share, upon which he paid $5 per share.

The bank commenced business in the spring of 1871, and continued until January 18, 1878, when it executed a deed of assignment to Daniel H. Miller, the use plaintiff. Prior to the assignment the board of directors laid an assessment upon the stock remaining unpaid; and after the assignment, on November 24, 1880, suits were brought by the assignee against the stockholders, including S. A. Bridges, to recover the unpaid assessment due on the stock.

In one of these cases, the only one tried, the court of common pleas held that a legal call and assessment were necessary before the right of action accrued, and decided that as but four of the directors had met (five constituting a quorum) and levied such assessment, it was not legally made, and the action must be de-

Cited in Lexow v. Pennsylvania Diamond Drill Co. 5 Pa. Dist. R. 499, 500, and in Swearingen v. Sewickley Dairy Co. 198 Pa. 68, 71, 53 L. R. A. 471, 47 Atl. 941, in which the above case is commented upon. See also Athens Car & Coach Co. v. Elsbree, 19 Pa. Super. Ct. 618.

feated. The assignee then, in order to comply with the ruling of the court below, to make a legal call, on January 15, 1880, presented his petition to the court of common pleas, alleging the insolvency of the bank and praying the court to order an assessment to be made.

Rules were served upon the stockholders, and in due course, by decree of court, an order for the assessment was made May 21, 1883. In compliance with this order notice was given to S. A. Bridges to pay the assessment, as per decree of the court. He failed to pay, and this suit was brought September 21, 1885. The defendant, M. M. S. Bridges, executrix, pleaded the statute of limitations; and the court below, upon proof of the facts by the plaintiff, entered a compulsory nonsuit.

Upon overruling a motion to take off the nonsuit the following opinion was delivered by Albright, P. J.:

From the plaintiff's evidence the jury could have found that the defendant's intestate was an original stockholder and that there is still owing $6,750.

According to the act of incorporation, P. L. 1870, p. 115, this ought to have been paid in before the issuing of letters of incorporation; it was intended to be a fund for the security of the depositors. At the trial a blank certificate, containing certain stipulations as to payment, was offered and rejected because there was no evidence that Mr. Bridges held the stock under such a certificate. So, the nature of his liability must be ascertained from said act. That capital, whether paid in or outstanding, was a trust fund for the depositor's benefit. Macungie Sav. Bank v. Bastian, 10 W. N. C. 71; Germantown Pass. R. Co. v. Fitler, 60 Pa. 131, 100 Am. Dec. 546; Bunn's Appeal, 14 W. N. C. 193.

The delinquent stockholder, while the corporation was going, was a trustee as to what he owed. The stockholders composed the corporation. They should have paid in all the capital before the actual organization. Said act says that the capital shall be formed and raised previous to the granting of the letters of incorporation. The delinquent stockholder could not have shielded himself behind the statute of limitations, because it did not apply to his case.

On January 16, 1878, the bank made an assignment to the use plaintiff for the benefit of its creditors. What was paid

upon the stock passed to the assignee. West Chester & P. R. Co. v. Thomas, 2 Phila. 344; Germantown Pass. R. Co. v. Fitler, 60 Pa. 131, 100 Am. Dec. 546.

The law required it to go into his hands, and in his hands it would still bear the impress of a trust. It was distributable to those for whose benefit it was created—the depositors. One who was indebted for stock could not set off a debt owing by the bank to him. Macungie Sav. Bank v. Bastian, 10 W. N. C. 71.

Immediately upon the assignment, the plaintiff had a right of action against defendant's testator. In such action the creditors would be the use plaintiffs. Then the assignee was the trustee, and the delinquent stockholder's position was that of a debtor. As the right of action then accrued, the statute of limitations, which has been pleaded by the defendant, began to run.

It is urged by plaintiff's counsel that the order of the court made in May, 1883, authorizing the collection of what was owing on the stock, was necessary to enable the plaintiff to sue, and that the statute began to run from that date. That order was asked by the assignee, on the ground that no quorum of the board of managers of the defunct corporation could be procured to make the call, and that the stockholders held the stock under the conditions indicated by said certificate; that they, by the certificates, were liable to pay such other instalments as should be legally required. (That Mr. Bridges held by such a certificate is probable, but that was not shown.) That order was of the same effect as a call by the board would have been.

Need it be argued that it could not add to or affect the contract liability of a delinquent stockholder? It could not, did not, pretend to adjudge that the stockholders were indebted. By the very terms of the act of incorporation, the stockholders owed absolutely; they owed for their stock absolutely before a board of managers existed. Any attempt by the board, by stipulations in certificates or otherwise, to make it payable on conditions was an attempt to defraud the depositors, and was void. The delinquent stockholders were legally required to pay all along. Plaintiff's case would be no stronger if he had proved that Mr. Bridges held his stock by a certificate like the one offered. The case of Yeager v. Scranton Trust Co. 14 W. N. C. 296, decides that no call is necessary where the corporation is insolvent.

The corporation was insolvent at the time of the assignment,

utterly so. As was shown at the trial, eight years after the assignment, enough only to make a dividend to the creditors of 5 per cent was realized. The fact of assignment was prima facie evidence of insolvency.

The principle of the case of Finkbone's Appeal, 86 Pa. 368, relied on by plaintiff's counsel, does not apply. That was a bailment for safe-keeping. Defendant's testator's relation to the assignee resembled that in question in Andress's Appeal, 11 W. N. C. 294, a case of a note payable on demand. In the former case the statute ran from the time of demand, in the latter from the date of the note.

The contention of plaintiff's counsel, in support whereof Mean's Appeal, 85 Pa. 75, and Craig's Appeal, 92 Pa. 396, were cited, that defendant was not liable, that no action accrued to plaintiff until it had been ascertained that the other assets were insufficient to pay the creditors, is untenable, because this is not a proceeding to enforce the personal liability of a stockholder for debts of the corporation. It is of quite a different character; it is an action to recover a debt contracted by the stockholder. In a proceeding under the last section of the act incorporating this bank the argument would apply. Said section provides that the stockholders shall be personally liable to the depositors, in double the amount of the capital stock.

At the time of suit this was not a continuing trust. The assignment vested in the plaintiff the right to sue for the creditor's benefit. That terminated the trust so far as defendant's testator was concerned.

If this evidence had been offered in an action brought the day after the assignment was made, the court would hold that if the jury found that Mr. Bridges was an original stockholder, as it is alleged that he said he was, then the plaintiff would be entitled to recover the amount claimed. As a consequence, an action brought more than seven years later is barred by the statute of limitations.

The assignments of error specified the action of the court in refusing to take off the nonsuit and in overruling the motion so to do.

*Henninger & Dewalt,* for plaintiff in error.—A stock subscription is either an ordinary fund or debt, or is a trust fund.

If it be the former, then the statute of limitations commences to run from the time of subscription. If it be the latter, then the liability exists and continues until the terms of the trust are fully complied with.

The capital stock of a corporation, whether fully paid or outstanding in the hands of subscribers thereto, is undoubtedly a trust fund for the benefit of its creditors. Macungie Sav. Bank v. Bastian, 10 W. N. C. 71.

The capital stock of a moneyed corporation is a fund for the payment of its debts; it is a trust fund of which the directors are the trustees; it is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. Upton v. Tribilcock, 91 U. S. 47, 23 L. ed. 204; Sanger v. Upton, 91 U. S. 60, 23 L. ed. 221.

As long as there is a continuing and subsisting trust, acknowledged or acted upon by the parties, the statute of limitations does not apply. 2 Story, Eq. § 1520; Johnston v. Humphreys, 14 Serg. & R. 394; App v. Dreisbach, 2 Rawle, 287, 21 Am. Dec. 447; Lyon v. Marclay, 1 Watts, 271; Finney v. Cochran, 1 Watts & S. 112, 37 Am. Dec. 450; Zacharias v. Zacharias, 23 Pa. 452; Heckert's Appeal, 24 Pa. 482.

No right of action exists, and the statute of limitations does not begin to run until the demand stipulated for in the contract has been duly made. Girard Bank v. Bank of Penn Twp. 39 Pa. 92, 80 Am. Dec. 507.

Where the capital is by the charter at all times liable to the depositors to the amount of their deposits and the interest accruing thereon, defendant stockholders cannot plead the statute of limitations against the company for call upon the unpaid stock, although it has not been called in within six years. Allibone v. Hager, 46 Pa. 48.

The property of the bank is primarily liable for the debts of the corporation; the assets of the bank should first be applied in discharge of that indebtedness; the personal liability of the stockholder is designed as further security to a depositor; hence, although a stockholder is personally liable to a depositor, yet, unless the statute directs otherwise, it is a liability which in equity cannot be enforced until the assets of the bank, which is the primary debtor, are first exhausted. Means's Appeal, 85 Pa. 75; Patterson v. Wyomissing Mfg. Co. 40 Pa. 117.

Stockholders are not sureties; their liability is special and

*sub modo* only; it is limited to an amount equal to their subscriptions, and it accrues only when the assets of the bank have been exhausted. Neither can it be enforced, except by a judicial decree first had and obtained. Craig's Appeal, 92 Pa. 396.

It is absolutely essential that in some mode there shall be an ascertainment in some form of the fact of insolvency; of the exhaustion of all other assets; of the amount of the debts due the corporation; of the amount of capital stock required for the discharge of the debts, and a call or assessment upon the stockholders for the payment of the amount necessary to be paid by each. Bunn's Appeal, 14 W. N. C. 193; Bell's Appeal, 115 Pa. 88, 6 Cent. Rep. 160, 2 Am. St. Rep. 532, 8 Atl. 177.

Until the proportion and time for payment had been determined and the requisite notice given the statute of limitations did not begin to run. Until then the plaintiff had no right to sue. Sinkler v. Indiana & E. Turnp. Road Co. 3 Penr. & W. 149.

The statute of limitations does not begin to run on a deposit note given by a member of a mutual insurance company, whereby he agrees to pay a sum certain or any part thereof, when required, and which by its terms is part of the absolute funds of the company until an assessment is laid. Bigelow v. Libby, 117 Mass. 359; Smith v. Mercer County Mut. F. Ins. Co. 42 Phila. Leg. Int. 297.

Laforge v. Jayne, 9 Pa. 410, which was in part relied upon by the defendant in the argument before the court below, was overruled by Finkbone's Appeal, 86 Pa. 368, and Codman v. Rogers, 10 Pick. 112, is not applicable to this class of cases.

In Morawetz on Private Corporations, § 822, the writer states the law as follows: "If a receiver or assignee in bankruptcy has been appointed to collect the assets of an insolvent corporation for the benefit of its creditors, the court should direct the receiver or assignee to make a ratable assessment upon the shareholders for so much of the amount unpaid on their shares as may be necessary for the satisfaction of creditors. . . . The object of an assessment by the court is merely to do equity among the shareholders by distributing the collective liability ratably among them. . . . An assessment thus made by the court operates as a demand upon each shareholder of a contribution of the amount assessed against him for the benefit of creditors;

and the receiver or assignee representing creditors is authorized to collect the amount assessed and enforce payment by suit against each delinquent shareholder. Every shareholder is liable to the receiver or assignee after such an assessment, whether he was a party to the proceeding or not."

When stock is subscribed to be paid upon call of the company and the company refuses or neglects to make the call a court of equity may itself make the call, if the interest of the creditors requires it. The statute of limitations does not begin to run in his favor until such order or demand. Scovill v. Thayer, 105 U. S. 143-155, 26 L. ed. 968, 974; Cornell's Appeal, 114 Pa. 153, 5 Cent. Rep. 181, 6 Atl. 258, and Mack's Appeal, 3 Sad. Rep. 316.

*F. C. Brewster* and *R. E. Wright's Sons,* for defendant in error.—The statute of limitations in this case was a bar to the maintenance of the suit. There was no evidence offered of the terms of the contract of subscription; therefore if there was any contract at all, it must be assumed to be a contract to pay immediately without any condition of any kind.

No assessment, demand, notice, call, or condition precedent of any nature was required before liability arose, and hence the statute of limitations, which always begins to run when the right of action accrues, in this case began to run immediately, to wit, in 1870.

Even if, however, as was contended, without proof, the subscription was a conditional one and payable only upon demand, assessment, or call, it was incumbent upon the bank to make the demand, assessment or call; and if it failed to do so, the statute of limitations began to run from the time when the plaintiff could have made the demand. Laforge v. Jayne, 9 Pa. 410; Andress's Appeal, 11 W. N. C. 294; Pittsburgh & C. R. Co. v. Byers, 32 Pa. 22, 72 Am. Dec. 770; McCully v. Pittsburgh & C. R. Co. 32 Pa. 25; Pittsburgh & C. R. Co. v. Graham, 36 Pa. 77; Pittsburgh & C. R. Co. v. Plummer, 37 Pa. 413; Allibone v. Hager, 46 Pa. 48.

A bank may be liable upon a certified check seven years after its date, because by the act of certifying the bank makes the holder of the check a depositor. Girard Bank v. Bank of Penn Twp. 39 Pa. 92, 80 Am. Dec. 507.

Where an act of incorporation provides: "If any loss or de-

ficiency of the capital stock in any bank shall arise from the official mismanagement of the directors, the stockholders at the time of such mismanagement shall in their individual capacities be liable to pay the same," the stockholders, if under this section liable to a suit of the creditors, must be sued within six years from the time of loss or deficiency of the capital, or else be barred by the statute. Baker v. Atlas Bank, 9 Met. 182.

Where a bank failed and receivers were appointed, April 15, 1854, a bill in equity filed by the receivers June 16, 1860, for confirmation of an assessment upon stockholders for the purpose of redeeming the bills of the bank is barred by the statute. Com. v. Cochituate Bank, 3 Allen, 42.

Where a bank fails and after the period of limitation creditors file a bill to enforce liability of stockholders under the charter, the statute of limitations is a good defense to the bill. Carrol v. Green, 92 U. S. 509, 23 L. ed. 738, and Terry v. Tubman, 92 U. S. 156, 23 L. ed. 537; Godfrey v. Terry, 97 U. S. 171, 24 L. ed. 944; Glenn v. Dorsheimer, 23 Fed. 695.

The liability of a stockholder in a national bank is not such a bad or doubtful debt as is contemplated by § 5234 of the Revised Statutes of the United States, U. S. Comp. Stat. 1901, p. 3507, and, therefore, a court cannot order it to be sold or compounded. Price v. Yates, 7 W. N. C. 51.

A note given to a mutual fire insurance company, organized under the general law, as one of the notes required by the statute (chap. 308 of 1849) to make up its capital is in legal effect payable on demand, i. e., at its date, although by its terms payment was to be made at such times and in such portions as the directors might require. No actual demand is necessary in respect to such a note. The statute under which it is given fastens upon it the character of a note payable absolutely, or at the mere will of the holder. The statute of limitations begins to run against such a note at the time it is given, and is a good defense at the expiration of six years from that time. Howland v. Edmonds, 24 N. Y. 307.

In Bell's Appeal, 115 Pa. 88, 6 Cent. Rep. 160, 2 Am. St. Rep. 532, 8 Atl. 177, it is decided that the cause of action upon a subscription to the stock arises upon the incorporation of the company.

The statute of limitations runs against a trust from the time the trust is enforceable by the *cestui que trust.*

In an action against an attorney at law for neglecting to prosecute a claim until it was barred by the statute of limitations, where there was no concealment on the part of the attorney, the plea of the bar of the statute is a good defense. Moore v. Juvenal, 92 Pa. 484.

Where the duty is immediate the right of action arises, and the statute begins to run from the attorney's receipt of money. Rhines v. Evans, 66 Pa. 192, 5 Am. Rep. 364.

The trusts and trustees not reached or affected by the statute of limitations are those technical and continuing trusts which are not cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of a court of equity. Barton v. Dickens, 48 Pa. 518; Kane v. Bloodgood, 7 Johns. Ch. 110, 11 Am. Dec. 417; Finney v. Cochran, 1 Watts & S. 118, 37 Am. Dec. 450.

An attorney in fact who collects money for his principal is bound to pay it over at once; and his neglect to do so is a breach of the implied contract for which an action of assumpsit will lie. The statute of limitations begins to run from the time the right of action accrues and not from the time notice is given of the receipt of the money, unless there has been fraudulent concealment on the part of the attorney. Campbell v. Boggs, 48 Pa. 524; Glenn v. Cuttle, 2 Grant, Cas. 273.

Where an attorney, on a process issued by him for his client, purchases bank stock of the defendant for less than his client's claim and takes the title in his own name, the statute of limitations begins to run against the client's right to claim the stock as a trust for him, from the date of the purchase and not from the time when he is notified of it. Downey v. Garard, 24 Pa. 52.

A trust to escape the statute of limitations must be a direct trust, belonging exclusively to the jurisdiction of a court of equity, and the question must arise between the trustee and the cestui que trust. Lyon v. Marclay, 1 Watts, 271.

PER CURIAM:

The whole evidence in this case was not sufficient to sustain a verdict for the plaintiff. The court, therefore, did not commit any error in ordering a nonsuit and in refusing to take it off.

Judgment affirmed.